[No. 7832.   Decided May 28, 1909.]

HOUSER & HAINES MANUFACTURING COMPANY, *Appellant,* v. JAMES McKAY, *Respondent.*[1]

SALES—BREACH OF WARRANTY—REMEDIES OF PURCHASER — DAMAGES RECOVERABLE—ELECTION.   Upon the breach of an implied warranty of a combined harvester, the purchaser may elect to rescind the sale and recover the purchase money paid, or he may retain the machine and offset against the purchase price the damages to his crops naturally resulting from the breach; but he cannot, in an action for the price, recover on counterclaim both the purchase money paid, as upon a rescission, and damages to his crops by reason of the breach of warranty, as the remedies are inconsistent (DUNBAR, CHADWICK, and FULLERTON, JJ., dissenting).

SAME—RESCISSION FOR BREACH OF WARRANTY—PLEADING—ISSUES —MEASURE OF DAMAGES.   In an action for the purchase price of a combined harvester in which the defendant set up a breach of warranty and claimed damages to his crop in attempting to use the machine, and it appears from evidence admitted without objection that the defendant rescinded the sale and refused to accept the machine, defendants measure of damages is the sum paid on the purchase price; and he cannot recover for damages to his crop (DUNBAR, CHADWICK, and FULLERTON, JJ., dissenting).

Appeal from a judgment of the superior court for Lincoln county, Warren, J., entered September 19, 1908, upon the verdict of a jury rendered in favor of the defendant, in an action on contract.   Reversed.

*Hamblen, Lund & Gilbert* (*William A. Gilbert,* of counsel), for appellant.

[1]Reported in 101 Pac. 894.

*Merritt, Oswald & Merritt*, for respondent, contended, *inter alia*, that damages to crops could be recovered on breach of the warranty, as reasonably within the contemplation of the parties. 1 Sutherland Damages (3d ed.), pp. 176-7; *Griffin v. Colver*, 16 N. Y. 489, 69 Am. Dec. 718; *Milburn v. Belloni*, 39 N. Y. 53, 100 Am. Dec. 403; *Adams Express Co. v. Egbert*, 36 Pa. St. 360, 78 Am. Dec. 382; *Hammer v. Schoenfelder*, 47 Wis. 455, 2 N. W. 1129; *Shepard v. Milwaukee Gas Light Co.*, 15 Wis. 318, 82 Am. Dec. 679; *Frohreich v. Gammon*, 28 Minn. 476, 11 N. W. 88; *Borradaile v. Brunton*, 8 Taunt. 535, 4 E. C. L. 202; *Goodloe v. Rogers*, 9 La. Ann. 273, 61 Am. Dec. 205; *Mowbray v. Merryweather*, 65 L. J. Q. B. 50; *Smeed v. Foord*, 1 El. & El. 602; *Brown v. Edgington*, 2 M. & G. 279, 40 E. C. L. 371; *Hadley v. Baxendale*, 9 Exch. 341, 26 Eng. Law & Eq. 398; Sedgwick, Measure of Damages (4th ed.), p. 79.

Gose, J.—This action was instituted for the purpose of recovering a judgment against the defendant for the sum of $1,600 and interest, upon a contract for the sale and delivery of a combined harvester. The case was tried to a jury, and resulted in a verdict and judgment against the plaintiff for the sum of $520. The plaintiff has appealed from this judgment.

The complaint set forth the sale and delivery of the harvester and the failure of the defendant to pay the purchase price. The defendant pleaded affirmatively that, in October, 1906, he gave the plaintiff a written order directing it to manufacture at Stockton, California, and ship to him at Wilbur, Washington, a certain described combined harvester, for which he agreed to pay it $1,600 at fixed dates; that the defendant ordered such harvester manufactured for the purpose of harvesting his crop, as the plaintiff well knew; that the plaintiff sold the same to him for harvesting purposes; that there was an implied warranty upon the part of the plaintiff that the harvester was made of good material; that

it was fit and proper for such purpose; that it would success-
fully harvest his crop; that it was not properly constructed;
that it was not made of good material; that it was not fit
or suitable for harvesting purposes; that after reasonable
trial, it was found inadequate and useless for the purpose it
was intended to accomplish, and of no value; that he gave
the machine a fair trial, and as a result of its failure to do
the work which it is warranted to do, and the delays incident
to its trial, his grain became overripe; that he lost a large
part of his crop, and the remainder was greatly impaired in
value by reason of such delay.   The injury and loss to his
crop was alleged to be $1,750, which he specially pleaded.
He further claimed the sum of $125, which he alleged he had
paid as freight on the harvester from the factory to Wilbur.
The reply joined issue on the affirmative matter pleaded in
the answer.   The court instructed the jury in substance that,
if it found by a preponderance of the evidence that these
affirmative facts pleaded in the answer were true, they should
determine the amount of damage that might fairly and rea-
sonably be considered as arising from such breach of con-
tract, and such as it would be reasonable to conclude had been
in the contemplation of both the parties at the time they
made the contract, as the probable result of its breach, and
return a verdict for the respondent for such sum.   This in-
struction is assigned as error.

The appellant urges that, when the respondent became
aware of the fact that the harvester was not such as the ap-
pellant had warranted it to be, he had the right to elect as
to one of two courses; (1) he could refuse to accept the ma-
chine, rescind the sale, and recover any sum that he had paid
on account of the purchase price; (2) that he could retain
the machine and offset against the purchase price such dam-
ages as naturally and proximately resulted from the breach
of the warranty.   We think these propositions are well estab-
lished.   At any rate, we have not been able to find any diver-

sity of authority on this question.   The governing rule in
such cases is very aptly and tersely stated in *Osborne & Co.
v. Poindexter*  (Tex. Civ. App.), 34 .S. W. 299.   At page 301
it is said:

"The plaintiffs might have tendered back the machine, and
demanded their notes and money, or, at their option, might
elect to keep the machine, and pay the price, and sue for
damages in the difference in value of the machine as repre-
sented and warranted, and as it really was, and for the
special damages occasioned by the breach of the warranty."

See, also, Mechem, Sales, par. 816; 30 Am. & Eng. Ency.
Law (2d ed.), pp. 190-7.

"The bringing of an action on the warranty for damages
implies an affirmation of the contract of sale and a *prima
facie* liability for the contract price, less the damages sus-
tained in consequence of the breach of warranty."   30 Am.
& Eng. Ency. Law (2d. ed.), 197, par. d.

"The buyer may not pursue two inconsistent remedies; if
he chooses to exercise the special remedy by returning the
article to the seller, he is then confined to a recovery of the
purchase money paid, and cannot maintain an action to re-
cover damages for a breach of the warranty."   See authority
last cited, p. 199, par. g.

The same rule is very clearly stated in *Abraham Bros. v.
Browder,* 114 Ala. 287, 21 South. 818.   From page 290 we
excerpt the following:

"There must be a subsisting contract to support an action
for a breach of warranty.   If the facts justify it, a buyer
may rescind a contract and sue for the purchase money paid;
or he may sue and recover damages for a fraud practiced
upon him; or he may affirm the contract and maintain an
action for breach of warranty.   He cannot insist that a con-
tract has been rescinded, and yet recover on the contract."

In *Park v. Richardson & Boynton Co.,* 81 Wis. 399, 51 N.
W. 572, the court had under consideration an instruction
which permitted the purchaser to recover as damages both
what he had theretofore paid and any damage which he sus-

tained by reason of the failure of the article purchased to meet the requirements of the warranty.  The court said:

"This was certainly error, because it blends two distinct rules of damages, one of which is applicable to the action for rescission, and the other to the action for breach of warranty. If the action be one to rescind the sale and recover back the purchase money under the provisions of the contract of sale, then the latter part of the instruction should not have been given."

The respondent, after the breach of the contract was established, properly claimed the right to have the money refunded which he had paid as freight on the harvester from the factory to the point of destination.  This was a part of the purchase price.  If the machine would not harvest his crop as it was warranted to do, he had a right to a return of this amount.  This he had properly pleaded.  The fact that he also pleaded items of damages which were not recoverable upon an election to rescind the contract does not preclude the recovery of this item.  Whilst it is true that the respondent in his answer did not formally tender a return of the harvester, yet he pleaded that it had no value, and that there was an entire failure of consideration.

The case, however, as we view it, was tried on the theory that there had been a rescission of the contract by the respondent.  The appellant introduced in evidence a letter which had been written to it by the respondent, bearing date September 3, 1907, in which it is stated: "Your combined harvester has not proven satisfactory.  I have given it up." The respondent when on the witness stand in his own behalf upon cross-examination, testified that he made no claim to the machine.  This view is strengthened by one of the court's instructions wherein, in directing the jury as to the different kinds of verdicts which it could return, the court said:

"The Court:  I am furnishing you, gentlemen, three forms of verdict.  One is a verdict in favor of the Houser & Haines Manufacturing Company and assesses the plaintiff's damages at the sum of $1,600 with interest at ten per cent per annum

from August 1st, 1907.  If you should find for the plaintiff,
that will be your verdict.  The other is, 'We, the jury, find
for the defendant in the sum of . . . . . . . , dollars.'  If you
should find in favor of the defendant, James McKay, and
further find he is entitled to damages from the plaintiff, you
will insert in there the amount of damages he is damaged.
And the other form is in favor of the defendant, James Mc-
Kay.  If you should find in favor of the defendant, James
McKay, and should not find for him any damages, then you
will sign that form of verdict."

The $1,600 and interest was the purchase price according
to the contract.  Admittedly this instruction could only be
correct on the assumption that the case had been tried on the
theory that the respondent had rescinded the contract.  If
he were seeking to assert a counterclaim for his damages,
that course would necessarily imply that he had elected to
accept the machine, and the appellant could then recover the
difference between the contract price and the value of the
machine as it was delivered to the respondent, less such dam-
ages, if any, as resulted directly and proximately from the
failure of the appellant to comply with its contract and furn-
ish a machine that would do the work which it was war-
ranted to do.  This was not submitted to the jury.

Moreover, the respondent has set forth his affidavit in his
brief in which he states that the appellant has accepted the
machine since the cause was tried.  There is an admission of
this statement in the reply brief.  Upon the issues as joined
in the pleadings, and under the evidence which was admitted
without objection, the jury should have been instructed as to
the measure of damages in case they found that the machine
was not what it was warranted to be, and there had been a
rescission of the contract by the respondent.  The measure
of damages in such case would be the amount of freight which
the respondent had paid on the machine.  As we have said,
this freight was in effect a payment upon the purchase price.
It was contemplated between the parties that the appellant
should manufacture the machine at its factory in the city of

Stockton, in the state of California, and that it should ship it to the respondent at Wilbur, Washington, where it was to be used for harvesting purposes. The purchase price was $1,600, plus the freight between such points. It follows, therefore, that the court committed error in giving the instruction complained of.

Reversed and remanded for a new trial. The appellant will recover its costs on this appeal.

RUDKIN, C. J., CROW, MOUNT, MORRIS, and PARKER, JJ., concur.

FULLERTON, J., dissents.

DUNBAR, J. (dissenting)—I dissent. The majority opinion, in my judgment, deprives the respondent of a right which the law gives him. There is no insufficiency of facts pleaded. The machine was worthless to respondent; hence he ought to have his purchase money back. By reason of relying on the representations made when he bought the machine, he is damaged; hence he ought to recover his damages. Must he be driven to the expense and delay of two actions, in face of the universal sentiment and judgment of courts that a multiplicity of suits should be avoided? Such a practice would not be tolerated by this court for one moment. Then, if he is not allowed to join his causes of action, as is decided in this case, he must of necessity lose one of his causes of action and be deprived of a legal right. To illustrate: If A purchases a horse of B for $300, under a warranty that the horse is a safe driving horse, and instead he proves to be vicious and wild and, when he is hitched up, runs away, demolishing A's carriage, which is worth $300, it is evident that A is injured in the whole transaction $600, $300 for the purchase price of the horse, which is useless to him, and $300 for the loss of the carriage. And yet this court, in effect decides that he must keep the horse, which he cannot use and which is a source of constant expense to him, in order to recover for damages to his carriage; or, if he desire to recover the

purchase price of the horse, he must lose his claim for damages to his carriage. This is a simple but true and practical illustration of the effect of the rule adopted by the majority.

Many cases are cited to sustain the doctrine announced in the majority opinion, and I am free to confess that the weight of authority sustains the opinion. But such authorities do not reflect the spirit of our code. It is said in one of the cases cited:

"The buyer may not pursue two inconsistent remedies. If he chooses to exercise the special remedy by returning the article to the seller he is then confined to a recovery of the purchase money paid and cannot maintain an action to recover damages for a breach of the warranty."

Of course, he should not pursue two inconsistent remedies. But, under the provisions of the code, he is not pursuing two inconsistent remedies. These cases assume the very question in controversy, viz., whether the remedies are inconsistent, and so assuming instead of determining, such decisions, numerous as they may be, should have no weight whatever. Our code has done away with many of the technicalities and all of the fictions which were tolerated by the common law in pleadings, and it has substituted a plain statement of the facts constituting a cause of action. The essential idea of the code is simplicity. It provides in the first place, that all forms of actions heretofore existing shall be abolished; that there shall be but one form of action; that every action shall be prosecuted in the name of the real party in interest; a simple summons is provided for, and then comes the crowning provision that the complaint shall contain a plain and concise statement of the facts constituting the cause of action. This complaint is met by an answer which denies or admits the allegations of the complaint, or makes a simple statement of any new matter constituting a defense. There the litigants are before the court in a simple and effective way to try out the controversy made by the pleadings. The statute

also specially provides that the plaintiff may unite several causes of action in the same complaint when they all arise out of a contract express or implied.

The controversy in this case is a controversy which is commensurate with the whole transaction, and certainly arose out of a contract. The contract expressed was to furnish a machine which would do the work it was represented to do; the implied contract was responsibility for all damages arising from its breach as naturally and proximately resulting from the breach of the warranty. And when it is admitted and proved that there was a violation of the contract, and that by reason of such violation the character of damages which we have mentioned accrued, there seems to me to be no reason in the world for compelling the defendant to lop off and lose a portion of his loss which arose from a violation of the contract. Again, the statute permits, and this court has decided in *Barto v. Nix*, 15 Wash. 563, 46 Pac. 1033, that even where a complaint sets forth facts tending to show liability both in tort and on contract, such recital is not open to objection on the ground of stating more than one cause of action, when such facts all relate to a single transaction and are relied upon as the basis of a single cause of action, the court in that case saying:

"This complaint simply set out in an orderly manner a statement of the facts relating to the transaction which was relied upon to show that the plaintiff was entitled to recover a judgment against the defendants; and while some of the facts so alleged may have tended to show that a contract was entered into between the bank and the defendants, and others to show wrongful action on the part of the defendants and the bank, they all related to a single transaction and were properly included in a single count. Whether a claim of relief is rightfully founded upon a contract relation entered into, or wrongful acts done, where but a single transaction is relied upon, the recital of the facts relating to such single transaction is not open to objection, for the reason that such recital may tend to show a liability upon contract and also in tort."

Here it cannot be gainsaid that the causes of action which are alleged all arose out of the same transaction, viz., the contract to furnish a machine which would do good work, and the damages flowing from the violation of the contract. The trouble arises from an attempt on the part of the court to classify, when the law especially repudiates classification, and demands of the plaintiff a statement of the facts which constitute all of his cause of action. Under the law the court is authorized to try the case as made by the pleadings and grant any relief embraced in the issues, and it cannot be said that the relief demanded is not embraced in the issues.

But, even under all the technical rules and fictions of the common law, this action would be sustained and defendant would be allowed to recover the damages proven in the case. On the other questions discussed I express no opinion.

CHADWICK, J., concurs with DUNBAR, J.