V. W. Stevenson, *Respondent*, v. Puget Sound
Vegetable Growers' Association, *Appellant*.[1]

*Allen, Froude, Hilen & Askren,* for appellant.

*H. Zander,* for respondent.

Holcomb, J.—Respondent recovered judgment for
damages for breach of a contract between the parties
in the sum of $623.61, plus interest and costs, from
which this appeal arises.

The contract between the parties provides:

"That the said party of the first part agrees to
sell and party of the second part agrees to buy 8
acres of true variety of Telephone peas, and Gradus
crop of 1930, at 5c pound, on or before June 29;
4½c lb. after June 30, 1930 to be delivered at pack-
ing shed, Sumner, Washington, free of charge and
expense whatsoever.

"And it is further agreed that the said party of
the first part will forward and deliver peas as soon
as matured and ready for market, and warrants the
same to be in good condition for shipping, grade

[1]Reported in 19 P. (2d) 925.

U. S. No. 1, uniform size, free from all defects, and also agrees not to sell or otherwise dispose of said peas until they have first delivered said tonnage to the party of the second part.

"And the party of the second part, in consideration of the agreements of the party of the first part hereon, agrees to pay within a week after delivery for all peas supplied by the party of the first part.

"And it is also agreed that the party of the second part shall rent pea containers to the party of the first part for the purpose of handling peas from the field to the packing shed, and in case crates hereby rented be destroyed or short in count at end of the season, the party of the first part agrees to pay for the cost of same.

"And it is further understood and agreed by the parties in case quality of telephone peas do not meet grade U. S. No. 1, party of the second part may at its option terminate this contract and become void."

The gist of the cause of the action of respondent is that there was a breach of the contract by appellant in failing to furnish sufficient crates to deliver the peas grown by respondent, as provided by the contract, making it impossible for respondent to execute his part of the contract by delivery of the crop at the time when sufficiently matured, by reason of which 17,677 pounds ripened on the vines, were useless and of no value, by reason of which respondent suffered damages in the contract price of the peas after June 30, 1930, less the cost of crating and hauling.

Appellant presents two propositions to support its appeal, namely: (1) that there was no shortage of crates as contended by respondent; and (2) that there was no evidence submitted from which the court could compute the damages, if any, according to the proper rule for measurement of damages in such cases.

The trial court, among other things, found, with

ample and competent evidenciary support, that respondent planted, cultivated and raised the eight acres of peas contracted for, had a good crop, above the average of that year, and delivered to appellant during that season, under and pursuant to the contract, 1,491 crates or boxes, or 44,796 pounds, of such peas, which were inspected by Federal inspectors employed by appellant, all of which were of the variety and grade specified in the contract, for which peas so delivered, appellant paid the contract price according to dates of delivery; that, from and after July 8, 1930, appellant failed to furnish respondent with sufficient crates to pick or handle his crop of peas and deliver them to appellant in proper time and season, and that appellant refused to accept the peas from respondent in any other containers except such as were furnished or supplied by appellant; that respondent used all diligence to secure from appellant sufficient crates to deliver his crop of peas, and fully and faithfully performed his part of the contract.

That peas must be picked at a certain stage of development, and, if not so picked in a few hours, will become unfit or overripe, necessitating the prompt furnishing and delivery of sufficient crates to handle such crop at the proper time; that, by reason of the failure and neglect of appellant to furnish to respondent a sufficient number of crates from July 8, 1930, until about July 15 or 16, appellant thereby made it impossible for respondent to deliver his crop of peas so contracted for, and caused the same to become overripe and useless. The court further found that, by reason of such breach of the contract on the part of appellant, 17,677 pounds of peas were undelivered, which, at the agreed price of 4½c per pound, amounted to $795.46, less $171.85 deducted for packing and hauling, leaving the balance due respondent of $623.61,

for which the court granted judgment in favor of respondent.

■ Appellant asserts that there was no evidence whatever to show the difference between the contract price and the market price at the time of the breach of the contract by appellant, if there was any such breach, and cites *Metzler v. Balcom,* 135 Wash. 318, 237 Pac. 716; *Olson v. Rice Company,* 155 Wash. 75, 283 Pac. 442; and in its reply brief cites Rem. Rev. Stat., § 5836-64, subdivisions (1) and (3), and *Pillsbury Flour Mills v. Independent Bakery,* 165 Wash. 360, 5 P. (2d) 517, 8 P. (2d) 430, 10 P. (2d) 975.

The sections of the statute, *supra,* cited, being part of the uniform sales act, together with subdivision (2), read:

"(1)   Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for non-acceptance.

"(2)   The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract.

"(3)   Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

Our cases above cited merely announce the general rule that a seller is entitled to recover in an amount equal to the difference between the contract price and the market price of the goods which the buyer refused to accept.  This contention by appellant disregards the plain terms of the contract it entered into, prohibiting respondent from selling or otherwise disposing of any of the peas grown upon the eight acres

by respondent to any other buyer than appellant, which it bought at an agreed price. It also ignores the overwhelming evidence that appellant refused to furnish crates and refused to permit respondent to pack his peas in any crates other than those of appellant. It also overlooks the overwhelming evidence that, after peas died on the vines, they were useless; in other words, without a market or market price.

Respondent was entitled to the benefit of his bargain, whatever that was. The difference between the contract price and the market price was 4½ cents per pound after June 30, 1930.

This cause of action is governed by subdivision two of the statute above quoted, and also by the fact that there was no available market for the goods in question other than that of appellant, whose contract withheld the sale of the peas by respondent to any other person or persons. See *Belisle v. Berkshire Ice Co.*, 98 Conn. 689, 120 Atl. 599, 34 A. L. R. 108, and notes; also, *Stewart v. Hansen*, 62 Utah 281, 218 Pac. 959, 44 A. L. R. 340, and notes.

The judgment of the trial court was amply sustained by the evidence, and the measure of damages applied was correct.

Affirmed.

BEALS, C. J., PARKER, MITCHELL, and MILLARD, JJ., concur.